**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TASHIKA D. SNORTON-PIERCE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE ILLINOIS STATE TOLLWAY ) <br> AUTHORITY, ) <br> ) <br> Defendant. ) | No. 09 C 07995 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tashika Snorton-Pierce sued her former employer, the Illinois State Tollway Authority, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.[1] The Tollway moves for summary judgment on all claims. R. 33. For the following reasons, the Tollway's motion is granted.

**I.**

In deciding this summary judgment motion, the Court views the evidence in the light most favorable to Snorton-Pierce. In October 2001, the Tollway hired Snorton-Pierce, an African American female, as a part-time toll collector. R. 32, Def.'s Stmt. of Facts (DSOF) ¶¶ 1, 17-18. During the interview process, the Tollway presented Snorton-Pierce with information about the position and certain conditions of employment. *Id.* ¶ 23. Before her employment began, Snorton-Pierce signed two forms

---

[1]The Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331.

indicating her understanding of the Tollway's availability policy. *See id.*; R. 33-3, Def.'s Exh. A (Snorton-Pierce Dep. Exh. 2). Specifically, Snorton-Pierce acknowledged that her interviewer "thoroughly explained" that she must be available to be called in to work on a twenty-four hours per day, seven-days per week basis. DSOF ¶¶ 6, 23. To this end, Snorton-Pierce agreed to have a "[t]elephone by which [she] can be reached at all times." R. 33-3, Def.'s Exh. A (Snorton-Pierce Dep. Exh. 2) (emphasis in original). The Tollway asserts that this employment policy is necessary because the Tollway operates twenty-four hours per day, seven-days per week. DSOF ¶ 5. If there are not enough toll collectors working the booths, the traffic can become congested and compromise safety. *Id.*

Snorton-Pierce was first assigned to work at Plaza 41. *Id.* ¶ 18. The District Supervisor for that plaza was Wardell Foreman.[2] R. 39, Pl.'s Stmt. of Facts (PSOF) ¶ 2. In 2002 and 2003, Snorton-Pierce received verbal and written warnings for violating the Tollway's attendance policy. DSOF ¶¶ 26-27. The April 2003 written warning (issued by the Plaza Supervisor, Kathy Herrington) lists over twenty attendance-related infractions, and warns that Snorton-Pierce's "attendance is far below [Tollway] Authority standards." *Id.* ¶ 27. Many of the documented infractions were the result of Snorton-Pierce being late for work or unavailable to be called in on the days that she was not scheduled to work. *See* R. 33-7, Def.'s Exh. E1. On January 5, 2004, Carrie

---

[2]The Tollway employs three District Supervisors, who each oversee a portion of the toll plazas. R. 33-6, Def.'s Exh. D (W. Foreman Dep.) at 64. Below the District Supervisors are the Plaza Supervisors, and then the Assistant Supervisors, who oversee the staff assigned to each toll plaza. *Id.*

Erwin, an Assistant Supervisor, issued a memorandum requesting additional discipline for Snorton-Pierce. PSOF ¶ 18. The memorandum states that "[t]he issue of being available on a 24-hour, 7-day a week basis . . . [has] been thoroughly explained on several occasions and **are** conditions of employment as a Toll Collector." R. 38-3, Pl.'s Exh. U (emphasis in original). The memorandum states that between December 12 and January 4, Snorton-Pierce was "not available" for additional hours or scheduling on three separate occasions, and "refused additional hours" on two other occasions. *Id.*

In January 2004, Snorton-Pierce and other African American toll collectors from Plaza 41 met with their union representative from Service Employees International Union Local No. 73. PSOF ¶ 16. According to Snorton-Pierce, the purpose of the meeting was to address the Tollway's alleged practice of disciplining African American toll collectors for non-existent and/or minor attendance-related infractions, whereas non-African American employees were granted more leniency and not disciplined for the same infractions.[3] *Id.* ¶ 15. Snorton-Pierce asserts that many of the African American employees were interested filing a class action lawsuit against the Tollway

---

[3]The Tollway does not dispute that a meeting between the African American toll collectors and their union representative occurred in early 2004. *See* Def.'s Resp. to PSOF ¶ 15. But the Tollway does dispute that African American toll collectors were disciplined for non-existent and/or minor infractions. *Id.* The Tollway also objects to Snorton-Pierce's asserted fact because it is "based solely on plaintiff's self-serving assertions"—an objection that is repeated throughout the Tollway's response to Snorton-Pierce's Local Rule 56.1 Statement of Facts. The Court reminds the Tollway that "evidence presented in a 'self-serving' affidavit or deposition is enough to thwart a summary judgment motion." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 175 (7th Cir. 2011) (citing *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)). Thus, if Snorton-Pierce's deposition testimony or affidavit created a factual dispute, than the Court would not be free to resolve it in the Tollway's favor. *See Kellar*, 664 F.3d at 175. There is nothing wrong with "self-serving" averments in an affidavit, so long as they comprise admissible evidence.

for discrimination.[4] *Id.* ¶ 17. When the Tollway did not respond to the African American employees' concerns, Snorton-Pierce requested a transfer to another plaza in order to escape the discriminatory treatment she was allegedly experiencing at Plaza 41. *Id.* ¶¶ 1, 17.

In February 2004, Snorton-Pierce was transferred to Plaza 36. DSOF ¶ 19. Her new supervisor was Robin Foreman, the wife of Wardell Foreman, who was the District Supervisor of Plaza 41. PSOF ¶ 3. Shortly after the transfer, Snorton-Pierce was again cited for attendance-related infractions. *Id.* ¶ 19. In April 2004, Vincent Volante (Toll Services Manager)[5] issued a ten-day suspension because Snorton-Pierce continued to be tardy for work and her attendance was not improving. *Id.* In June, a grievance hearing was held regarding the suspension. *Id.* ¶¶ 20-21. Snorton-Pierce's union representative, Terri Barnett, appeared and disputed the discipline on Snorton-Pierce's behalf and requested that the ten-day suspension be removed from Snorton-Pierce's file. R. 38-2, Pl.'s Exh. I (Hearing Decision). Barnett argued that Snorton-Pierce had legitimate reasons for being tardy and those tardies should not be applied for discipline due to "human error." *Id.* After considering all of the information, the hearing officer

---

[4]Snorton-Pierce's affidavit was filed as Plaintiff's Exhibit A, *see* R. 38-1. The affidavit adopted certain facts asserted in Snorton-Pierce's 56.1 Statement and lists the paragraph numbers that correspond to paragraph numbers in the Statement. The Court advises Snorton-Pierce and her counsel that affiants should not file affidavits that incorporate other documents that are not attached to the affidavits themselves. Rather, the affidavit itself should substantively list the facts and information to which the plaintiff claims to have first-hand knowledge.

[5]Wardell Foreman testified that Volante oversees all twenty-four toll plazas, and Wardell Foreman and the other District Supervisors report directly to Volante. R. 33-6, Def.'s Exh. D (W. Foreman Dep.) at 64.

decided to reduce the ten-day suspension to a five-day suspension, and reimbursed Snorton-Pierce for five days of pay. *Id.*

Snorton-Pierce's attendance problems persisted. In September 2004, Robin Foreman requested further discipline after Snorton-Pierce was tardy four more times *after* serving the April suspension. PSOF ¶ 22. Robin Foreman also noted Snorton-Pierce's attendance problems in the annual performance evaluation she completed for Snorton-Pierce in October 2004. DSOF ¶ 31. Out of the eight categories evaluated, Snorton-Pierce received a "needs improvement" rating in five of them: attendance, call-out response, job performance, quality, and initiative. R. 33-3, Def.'s Exh. A (Snorton-Pierce Dep. Exh. 3). As a result of her poor performance evaluation, Snorton-Pierce was denied a step increase in pay grade. DSOF ¶ 32. In a memo dated October 27, 2004, Vincent Volante explained that Snorton-Pierce's step increase was "denied on the basis of her poor job performance. In review of her appraisal, it has been noted that [Snorton-Pierce] is deficient in five (5) out of eight (8) categories, which is below [Tollway] Authority standards." R. 33-3, Def.'s Exh. A (Snorton-Pierce Dep. Exh. 3).

In March 2005, Miguel Sotomayor, the Plaza Supervisor for Plaza 36, submitted a disciplinary request regarding Snorton-Pierce's attendance. DSOF ¶ 33. Between November 2004 and March 2005, Snorton-Pierce had eleven attendance-related violations. R. 33-5, Def.'s Exh. C (Sotomayor Dep. Exh. 1). In response to Sotomayor's request, Volante recommended that Snorton-Pierce be fired for repeatedly violating the Tollway's attendance policy. DSOF ¶ 34. Snorton-Pierce was immediately suspended while the Tollway investigated the allegations that Snorton-Pierce had been

5

"excessively unavailable for scheduling and tardy from work." DSOF ¶ 35; R. 33-3, Def.'s Exh. A (Snorton-Pierce Dep. Exh. 10). On March 25, after completing its investigation, the Tollway fired Snorton-Pierce for violating the Tollway's policy concerning excessive unavailability for scheduling and tardiness. R. 33-3, Def.'s Exh. A (Snorton-Pierce Dep. Exh. 11).

In December 2005, Snorton-Pierce filed a charge of discrimination with the Equal Employment Opportunity Commission, through the Illinois Department of Human Rights. R. 7 (Compl.). In September 2009, the EEOC issued a right-to-sue letter to Snorton-Pierce,[6] and this action followed. *Id.*

## II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 37, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

---

[6]It is not clear from the record why there was a four-year lag between the time Snorton-Pierce filed her charge of discrimination and the time the EEOC issued the right-to-sue letter. But it appears that both the EEOC charge and complaint were timely filed.

### III.

Snorton-Pierce alleges that the Tollway: (1) discriminated against her because of her race, color, and sex; and (2) retaliated against her for complaining about the discrimination.

### A.

To survive summary judgment on the Title VII claims, Snorton-Pierce must adduce evidence that would allow a reasonable jury to find that the Tollway's decision to fire Snorton-Pierce was motivated by her race, color, or sex. Snorton-Pierce argues that she has sufficient evidence to show discrimination using the indirect method of proof. R. 38 (Pl.'s Br.) at 9-11.

"Under the indirect method, the plaintiff carries 'the initial burden under the statute of establishing a prima facie case of . . . discrimination.'" *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)). The plaintiff must offer evidence tending to show that (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated persons outside the class received more favorable treatment. *Id*. Once a prima facie case is established, the burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. "When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id*.

1.

The Tollway argues that Snorton-Pierce cannot establish a prima facie case because she fails to meet prongs two and four. R. 33-1 (Def.'s Br.) at 5-8. The Tollway has also offered a non-discriminatory reason for firing Snorton-Pierce. *Id.* at 8-9. Specifically, the Tollway contends that Snorton-Pierce was fired for repeatedly disregarding the Tollway's attendance policies. *Id.* at 9. Thus, the question whether Snorton-Pierce was meeting the Tollway's legitimate expectations merges with the question whether the Tollway's reasons for firing her are honest. As the Seventh Circuit has noted many times, "when an employer has cited performance issues as the justification for its adverse action, the performance element of the prima facie case cannot be separated from the question whether the employer proffered a nonpretextual explanation for its challenged conduct." *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 491 (7th Cir. 2008); *see also Rodgers v. White*, 657 F.3d 511, 520 (7th Cir. 2011) (analysis of the prima facie case and pretext often overlap).

As described above, the record is replete with documents showing that Snorton-Pierce was disciplined numerous times for violating the Tollway's attendance policy during her years of employment. *See supra* at 2-6. Snorton-Pierce disputes this evidence with her own affidavit. *See* PSOF ¶¶ 18, 28-29. Snorton-Pierce argues that she *was* meeting the Tollway's legitimate expectations, and many of the recorded attendance violations were erroneous and should never have resulted in discipline. Pl.'s Br. at 5, 11-13.

For instance, Snorton-Pierce contends that many of the infractions listed in Sotomayor's March 2005 memorandum were "predicated upon [Snorton-Pierce] merely failing to answer the phone on her days off." Pl.'s Br. at 4. Snorton-Pierce asserts that Sotomayor's disciplinary request—and other similar write-ups in her file—do not preclude her from establishing the second prong of her prima facie case because she was not required to answer the phone on her days off. *Id.* at 4, 7. Snorton-Pierce points to the Collective Bargaining Agreement between the Tollway and her union, Local 73, that was in place during her employment as proof that it was improper for the Tollway to discipline Snorton-Pierce for being unavailable by telephone on her days off. *Id.* at 5-7. Specifically, Snorton-Pierce cites section 8.16 of the Agreement, which provides that if the Tollway changes a toll collector's schedule, "it will notify the employee of the schedule change not later than the employee's quitting time on the day preceding the schedule change." PSOF ¶ 5. But, as the Tollway points out, this provision of the Agreement pertains to changes in hours or days that have already been scheduled for the employee. R. 42 (Def.'s Reply) at 7. This procedure is different from situations where the Tollway calls a toll collector in to work on a day that the collector is *not* scheduled to work. *Id.* Thus, the Court concludes that the Collective Bargaining Agreement does not modify or override the Tollway's policy that part-time toll collectors be available to answer the telephone on a twenty-four hours per day, seven-days per week basis.

Snorton-Pierce agreed to abide by the Tollway's availability policy when she accepted the Tollway's offer of employment. DSOF ¶ 23. By signing the Tollway's

9

availability memorandum and check list, *see* Def.'s Exh. A, Snorton-Pierce agreed to the conditions of her employment, which expressly included being available on a twenty-four hour, seven-day per week basis and having a telephone by which the Tollway could reach her at all times. R. 33-3, Def.'s Exh. A (Snorton-Pierce Dep. Exh. 2). Moreover, the Tollway has introduced evidence showing that toll collectors may be disciplined for not being available or refusing to work a shift. DSOF ¶ 11. Terri Barnett, one of the Local 73 union representatives during Snorton-Pierce's employment, testified that disciplinary actions have been taken against employees for failure to be available when called in to a work shift. R. 33-4, Def.'s Exh. B (Barnett Dep.) at 20-21. When asked about the Tollway's availability policy, Barnett distinguished between instances where an employee answers her phone and refuses to come in to work the shift ("refusals") and instances where an employee was not available to answer the phone call at all ("non-availabilities"). Barnett Dep. at 21-22. Regarding the latter, Barnett testified that toll collectors have "[m]ost definitely" been suspended for being unavailable by telephone on their days off. *Id.* at 23.

It is clear that Snorton-Pierce has a different understanding of the Tollway's availability policy. But that difference does not itself create a genuine issue of fact with respect to the second prong of her prima facie case. Snorton-Pierce asserts that she was not required to have an answering machine and the Tollway did not provide her with a cell phone, but neither of these facts (which are undisputed) demonstrate that she was exempt from complying with the Tollway's availability policy, strict as it was. Based on the evidence in the record, a reasonable jury could only conclude that the

Tollway required its part-time toll collectors to be available by telephone on their days off, and Snorton-Pierce repeatedly violated the Tollway's policy.

Snorton-Pierce next argues that the Tollway wrote her up for attendance-related infractions on dates when her attendance was excused for medical reasons. Pl.'s Br. at 4-5. Thus, Snorton-Pierce claims that these violations cannot serve as evidence that she was not meeting the Tollway's performance expectations. For instance, Snorton-Pierce's affidavit states that she experienced pregnancy complications in February 2005 and requested a medical leave of absence. PSOF ¶ 28. As evidence of this alleged request, Snorton-Pierce offers a doctor's note dated March 22, 2005 and a pelvic ultrasound receipt from February 4, 2005. *Id.* But Snorton-Pierce's affidavit does not specify which Tollway supervisor or employee she spoke to about her medical condition. She generally claims that "[t]he Tollway refused to let [her] take a medical leave arising from complications due to her pregnancy." *Id.*

Snorton-Pierce's affidavit lacks sufficient factual detail on this issue. *See, e.g., Scaife v. Cook Cnty.*, 446 F.3d 735, 740 (7th Cir. 2006) ("broad-brushed, conclusory allegations" in plaintiff's affidavit insufficient to survive summary judgment); *see also* Fed. R. Civ. P. 56(c) (an affidavit opposing a motion for summary judgment must "set out facts that would be admissible in evidence"). Although Snorton-Pierce claims that Sotomayor (the Plaza 36 Supervisor) verbally approved her medical leave request after she presented him with the pelvic ultrasound receipt on February 4, 2005, she does not specify the time period for which she was requesting leave. PSOF ¶¶ 29-30. The doctor's note that identifies the period of medical leave as being February 4 through

11

March 22 was signed and dated on March 22, and thus could not have been tendered to Sotomayor on February 4. R. 38-3, Pl.'s Exh. M. Moreover, the Tollway does not possess any documents showing that Snorton-Pierce requested medical leave in February 2005. Def.'s Reply at 5 (citing W. Foreman Dep. at 40). Snorton-Pierce's evidence does not create a genuine issue with respect to whether the Tollway improperly issued attendance-related violations when Snorton-Pierce was allegedly on pre-approved medical leave. The evidence adduced by Snorton-Pierce is not specific enough to raise a jury question on this issue.

Snorton-Pierce fails to establish that she was meeting the Tollway's legitimate performance expectations at the time she was fired and, as such, her prima facie case fails. The evidence set forth by the Tollway demonstrates that on many occasions Snorton-Pierce was tardy for work, failed to answer telephone calls from the Tollway on her days off, and refused to come in on her days off. And although "a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion," *Payne v. Pualey*, 337 F.3d 767, 771 (7th Cir. 2003), Snorton-Pierce's affidavit is deficient for the reasons explained above.

Snorton-Pierce raises one additional argument in support of her contention that the Tollway's legitimate explanation for firing her is pretextual. Specifically, Snorton-Pierce argues that she and other African American employees were disciplined for "non-material and/or trivial violations" of the Tollway's attendance policy, while other non-African American were not. PSOF ¶¶ 1, 15. Snorton-Pierce asserts that she and other African American toll collectors from Plaza 41 raised their concerns with the

union representative in January 2004. *Id.* ¶ 16. But, again, the record is devoid of any facts or details supporting Snorton-Pierce's general assertion that the Tollway's attendance policy was unequally applied to workers based on race. As with the other evidence offered by Snorton-Pierce, this evidence lacks requisite detail to render it admissible. Thus, even if the Court were to assume that Snorton-Pierce made a prima facie case of discrimination, she fails to demonstrate that the Tollway's proffered reason for firing her was pretextual. There is no admissible evidence that the Tollway did not honestly believe that Snorton-Pierce should be fired for repeatedly violating its attendance policy.

### 2.

Snorton-Pierce's prima facie case also fails at the fourth prong of the *McDonnell Douglas* analysis. The similarly-situated inquiry requires "enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Coleman*, 667 F.3d at 847 (quoting *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007)).

Here, the Tollway argues that Snorton-Pierce is unable to identify any similarly situated employees who were treated more favorably than her. Def.'s Br. at 8. Snorton-Pierce responds that four non-African American male toll collectors received favorable treatment despite having similar attendance-related violations. Pl.'s Br. at 8-9. Snorton-Pierce argues that "the Tollway" treated these men more favorably in that they were permitted to have more violations before further discipline was sought. PSOF ¶¶ 37-40. Snorton-Pierce does not specify which Tollway supervisor issued the

13

discipline for each individual. Also, one of the proposed comparators is identified solely as "Jeff." *Id.* ¶ 37. This comparator is easily dismissed because there is no evidence in the record regarding "Jeff's" employment history with the Tollway, and Snorton-Pierce does not explain how she has personal knowledge (or other admissible evidence) of the underlying facts.

After reviewing the available employment records for the remaining members of the proposed comparison group, the Court concludes that none of the employees are "sufficiently comparable" to Snorton-Pierce "to suggest that she was singled out for worse treatment." *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006). For instance, two of the proposed comparators—Jerome Mitchell[7] and Todd Smaron—were also fired for repeatedly violating the Tollways attendance policy. DSOF ¶ 47; R. 42-9, Def.'s Exh. 8 (W. Foreman Aff.) ¶ 13. The final proposed comparator, Anthony Schultz, was issued a two-day suspension in March 2001. PSOF ¶ 38. Snorton-Pierce was not even employed with the Tollway at the time that Schultz was suspended for attendance-related violations. Moreover, the Tollway has presented additional documents showing that Schultz had submitted medically documented requests for leave pending in December 2000, which affected the disciplinary process in his case. R. 42-9, Def.'s Exh. 8 (W. Foreman Aff.) ¶ 12.

---

[7]Although Snorton-Pierce claims that Mitchell is a white male, the Tollway asserts that he is African American. Def.'s Resp. PSOF ¶ 39.

In short, Snorton-Pierce has failed to establish the fourth prong of her prima facie case of discrimination. Because the second and fourth prongs have not been met, Snorton-Pierce cannot proceed under the indirect method of proof.

**B.**

Finally, Snorton-Pierce claims that the Tollway retaliated against her for complaining about the discrimination against African Americans at Plaza 41. Pl.'s Br. at 13. As with her discrimination claim, Snorton-Pierce relies on the indirect method of proof. To establish a prima facie case of retaliation under the indirect method of proof, Snorton-Pierce must show, among other things, that she met the Tollway's "legitimate expectations and was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011). As discussed above, Snorton-Pierce is unable to establish these elements. Moreover, Snorton-Pierce does not present any evidence that she ever complained to the Tollway about the alleged discrimination. The only evidence in the record is derived from Snorton-Pierce's affidavit, which is not detailed enough to be admissible evidence. *See* PSOF ¶¶ 1, 15, 17.

Alternatively, Snorton-Pierce claims that she was fired in retaliation for a sexual harassment complaint she filed with the Tollway in December 2004. Pl.'s Br. at 13-14. Snorton-Pierce reported that an employee of a sub-contractor (thus, someone *not* employed by the Tollway) made sexual advances towards her while he was warming up inside of her toll booth. DSOF ¶ 39. The Tollway investigated the complaint and the

15

harasser verbally apologized to Snorton-Pierce on January 10, 2005; the incident was considered a closed issue. *Id.* ¶¶ 41-42. Again, Snorton-Pierce's indirect case fails because she cannot show that she was treated less favorably than a similarly situated employee who did not complain of statutorily protected activity. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). Moreover, the sexual harassment incident is completely disconnected from Snorton-Pierce's discrimination case. That incident was investigated and resolved by the Tollway's EEOC officer, and the Tollway went on to change its policy to state that subcontractors were only permitted to warm up in unoccupied toll booths on cold days. DSOF ¶ 43.

Snorton-Pierce has thus failed to establish any facts supporting her claim that she was fired in retaliation for engaging in activity protected by Title VII.

## IV.

For the reasons stated above, the Tollway's motion for summary judgment [R. 33] is granted.

ENTERED:

*Edmond E. Chang*
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2012